UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MSPA CLAIMS 1, LLC, a Florida
limited liability company,

       Plaintiff,

vs.                                 CASE NO.:  1:18-cv-00157

TOWER HILL PRIME INSURANCE
COMPANY, a Florida profit corporation;
TOWER HILL CLAIMS SERVICES, LLC,
Florida limited liability company,

       Defendants.

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATON AND MEMORANDUM IN SUPPORT

Defendants, Tower Hill Prime Insurance Company and Tower Hill Claims Services, LLC (hereinafter collectively "Tower Hill") respond in opposition to Plaintiff's Motion for Class Certification [D.E. 72 (hereinafter "Motion")] and state:

## I.  INTRODUCTION

Plaintiff, as a three times removed purported assignee of a now defunct Medicare Advantage Organization ("MAO") -- Florida Healthcare Plus, Inc. ("FHCP"), attempts to bring this putative nationwide class action on behalf of "All Medicare Advantage Organizations, First Tier, Downstream, and Related entities,

or their assignees" for Tower Hill's purported failures to pay under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y, *et seq.* (the "MSP Act").

Without evidence or support, Plaintiff demands certification of this overbroad class in order to implement a court-supervised, claim-by-claim administrative audit of Tower Hill's records to search for any conditional payments purportedly made by alleged class members not paid or reimbursed by Tower Hill. Such an audit necessarily would involve individualized assessments and determinations contrary to the very purpose of a class action. Plaintiff fails to disclose that its attempt to certify similar classes based on Florida's no-fault law have twice been rejected by Florida appellate courts: *Ocean Harbor Cas. Ins. v. MSPA Claims 1,* 261 So. 3d 637 (Fla. 3d DCA 2018); *IDS Prop. Cas. Ins. Co.* v. *MSPA Claims 1, LLC*, 263 So. 3d 122 (Fla. 3d DCA 2018). And, missing from its motion, despite the fact that Plaintiff and its group of litigation shell companies have filed dozens of these similar actions across the country, is any indication that their attempt to certify this type of class has proven successful.

Furthermore, Plaintiff's Motion is premised on the fact that its "Proposed Method" can answer questions regarding class-wide liability and damages, but it argues that it needs Tower Hill's data in order to perform this method. *See* Motion, pp. 3-4, 18-21. Yet, this Court has already ruled on this very issue and denied Plaintiff's request. *See* [D.E. 61]. Plaintiff has not moved for reconsideration of

this order and the discovery deadline has passed. [D.E. 64]. Thus, Plaintiff is left in the untenable position of arguing for certification based on the receipt of information and data that it will never obtain. And, Plaintiff's attempt to compel this information through a Motion for Class Certification, to the extent that was its intent, is not only procedurally improper but belies its own argument as to why this class should be certified. Plaintiff offers no argument or support for certifying a class against Tower Hill based on the information it presently has. Thus, Plaintiff's Motion for Class Certification could be denied on that basis alone.

In sum, Plaintiff's motion for class certification fails because: (a) there are far too many predominating individualized issues for this case to proceed on a class basis; (b) Plaintiff cannot satisfy Rule 23's commonality, numerosity, typicality, adequacy, and superiority requirements; and (c) Plaintiff's proposed class is overbroad, ill-defined, and impermissibly unascertainable.

## II. <u>ARGUMENT</u>

The party seeking to maintain a class action must affirmatively demonstrate its compliance with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345–46 (2011).Only after a "rigorous analysis" and a determination that the movant has satisfied Rule 23's prerequisites, may the court properly certify the class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). In addition to satisfying the Rule 23 requirements, a plaintiff must also demonstrate

that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012). The party seeking class certification has the burden of proof. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

## A. The Class Cannot Be Certified Because Individual Issues Predominate

Rule 23(b)(3)'s predominance requirement is far more demanding than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). For this element, "a district court must first identify the parties' claims and defenses and their elements" and "then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Brown*, 817 F.3d at 1234. "Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." *Id.* (internal quotations omitted). The court must then determine whether common questions predominate over the individual ones. Certification is inappropriate when "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof and argue a number of individualized legal points to establish most or all of the elements of their individualized claims." *Klay v. Humana,* 382 F.3d 1241, 1255

4

(11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639 (2008).

Plaintiff's request for a nationwide auditing project fundamentally misapprehends the nature of a class action. The Supreme Court long ago declared that the Rules Enabling Act does not allow a federal court to use Rule 23 to create a national "administrative claims processing regime." *Amchem,* 521 U.S. at 628. The Court emphasized that Rule 23 "cannot carry" such a "large load," *id.* at 629, but rather, (b)(3) predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.*at 623. If they are not, it is "not the mission" of Rule 23(b)(3) to "assure the class cohesion" in the first place. *Id.*

Yet, that is exactly what Plaintiff proposes with its ill-suited class action. Plaintiff's claims against Tower Hill are based on the MSP Act and its implementing regulations. Under the MSP Act, a defendant has no responsibility to pay charges that are not reasonable, or for services that are not medically necessary or unrelated to the relevant accident. *United Automobile Insurance Co. v. Millennium Diagnostic Imaging Center, Inc*., 12 So. 3d 242, 245-46 (Fla. 3d DCA 2009); *IDS*, 263 So. 3d at 124; *MSP Recovery, LLC v. Allstate Ins. Co*., No. 15-20788-CIV, 2015 WL 10857402, *3 (S.D. Fla. June 24, 2015) (same principle); *MSP Recovery, LLC v. Allstate Ins. Co*., No. 15cv20788, 2015 WL 5882122, *2

5

(S.D. Fla. Oct. 6, 2015) (same principle). These claims cannot be adjudicated on a class-wide basis because individual issues predominate as to (i) whether and to what extent the expenses were reasonable; (ii) were incurred for medically necessary treatment; and (iii) were for treatment related to the subject accident – all requirements for any primary payer reimbursement to be owed by Tower Hill.

By way of example, two separate panels of the Third District Court of Appeal in Florida[1] concluded that similar actions filed by Plaintiff against other insurers raised individualized issues that could not appropriately be certified for class-wide adjudication. First, in *Ocean Harbor*, 261 So. 3d at 648, the court concluded that "[p]roof that certain medical bills paid by MSPA's alleged assignor should have been paid by Ocean Harbor as a primary payer will not establish that other medical bills paid by a different MAO should also have been paid by Ocean Harbor as a primary payer. To the contrary, proof to establish liability will necessarily devolve into a serious of mini-trials . . . ." *Id.* at 648.

One month later, another panel reached the same conclusion:

> MSPA has failed to establish that common issues predominate over individual issues. . . . . To quantify the claims of the putative class members will require a comprehensive and distinct analysis of each underlying

---

[1] These opinions denied class certification under Fla. R. Civ. P. 1.220, which is modeled on Fed. R. Civ. P. 23 and interpreted in a similar fashion. *See, e.g., Seven Hills, Inc. v. Bentley*, 848 So. 2d 345, 353 (Fla. 1st DCA 2003).

> PIP claim and automobile accident. Such analysis will
> necessarily include, at a minimum, the amounts paid by
> IDS, the payees of IDS, whether such payments
> exhausted the insureds' PIP benefits, the amounts paid by
> Florida Healthcare Plus, and the payees of Florida
> Healthcare Plus. Plainly, this is one of those cases where
> merely proving entitlement to reimbursement from IDS
> for payments made by Florida Healthcare Plus on behalf
> of M.A., in no way proves the cases of the other class
> members.

*IDS Prop. Cas. Ins*., 263 So. 3d at 124.[2]

And, in *MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp, Inc.*, No. 18-CV-11702-ADB, 2019 WL 3239277, at *10 (D. Mass. July 18, 2019), the court found that Plaintiff's MSP Act claims against the insurer "would demand an individualized and fact-specific answer, not merely for each putative class member, but for each of every purported class member's allegedly unreimbursed claims." Accordingly, the court held that "[t]his case presents a rare instance in which striking the class allegations is appropriate."  *Id.; see also MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, No. 16-20212-CIV, 2018 WL 4963245, at *5 (S.D. Fla. Sept. 28, 2018) ("we preliminarily find that any effort to aggregate all these disparate claims through a Rule 23 class action process may

---

[2] Although *Ocean Harbor* and *IDS* were PIP cases, the analysis is the same here as in both instances at issue was the demonstration of responsibility under the MSP Act, whether it be by settlement or "other means" for putative class members. *See, e.g. Plymouth Rock Assurance Corp, Inc.*, 2019 WL 3239277, at *10 (putative settlement class).

7

ultimately be too difficult, or at least achievable only after protracted litigation to ensure the due process rights of all involved and the interests of judicial economy").

Despite these cases, and the host of individual issues raised by its putative class action, Plaintiff argues that it need only show that the following elements can be proven by common evidence: (1) Tower Hill is the primary payer, (2) Tower Hill failed to make primary payment or appropriate reimbursement, and (3) damages. Motion, p. 18. But, Plaintiff fails to make that showing.

1. <u>The Determination of Tower Hill's Primary Payer Status With Respect to Any Particular Claim Requires Individual Inquiry</u>

The question: "is Tower Hill a primary payer?" is not a common one. Tower Hill, like any other insurer, is a primary payer *in appropriate circumstances*. A determination of whether or not Tower Hill is the primary payer for any particular medical expense will depend on an analysis of the underlying expense payment and the terms of the settlement (if any) with Tower Hill.

Plaintiff argues that a defendant becomes a primary payer by virtue of having settled a bodily injury claim with a Medicare beneficiary enrolled in an MA Plan. Motion, p. 4. But, simply because a MAO makes payment on behalf of a Medicare beneficiary does not mean those paid-for medical expenses were related to the accident which is the subject of the claim against Tower Hill or that Tower

8

Hill's settlement with the MAO's beneficiary covered the same medical expenses. To determine those facts would require further inquiry.

A settlement establishes only the existence of a *potential* obligation under the MSP Act, not *liability*. In *MSP Recovery LLC v. Allstate Ins. Co.*, 835 F. 3d 1351, 1361 (11th Cir. 2016), the Eleventh Circuit repeatedly emphasized that plaintiffs have a separate and independent burden to prove the insurer is *actually responsible for the primary payment* of the medical expenses. *Id.* Indeed, *Allstate* emphasized that, even where the "demonstrated responsibility" condition precedent is satisfied, this "does not relieve Plaintiffs of their burden to allege in their complaints and then subsequently prove with evidence, that Defendants' valid insurance contracts actually renders Defendants responsible for primary payment of the expenses Plaintiffs seek to recover." *Id.*  And, the court made abundantly clear that a mere contractual obligation does not conclusively demonstrate liability under MSP Act. *Id.*  Thus, a settlement alone is not sufficient proof of Tower Hill's liability under the MSP Act for any particular claim.

Further, contrary to Plaintiff's position, motion at p. 20, Tower Hill does not agree with Plaintiff's position. *See* [D.E. 77, Ex. B (errata for Deposition Transcript of Bob Jaye)]. Tower Hill's corporate representative clarified that he would agree that Tower Hill would be a primary payer under the MSP Act following the settlement of a bodily injury claim "if Tower Hill's settlement

payment included coverage for accident related medical bills." [*Id.* (citing D.E. 71 at 38:1)]. A determination of whether the settlement payment included coverage for accident-related medical bills can only be made on a case-by-case basis.

Plaintiff also argues that Tower Hill's reporting under Section 111 is an admission of liability under the MSP Act. Motion, p. 19. But that too is not the case. Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (MMSEA) requires a Responsible Reporting Entity (RRE), following a determination that a "claimant" is entitled to benefits under Medicare, to submit certain information to the Secretary regarding that "claimant." 42 U.S.C. § 1395y(b)(8)(A) and (B).[3] Thus, a report under Section 111 is not an admission of liability, but rather notification to CMS that Tower Hill may have a claim asserted against it by a person who is a Medicare beneficiary.

Plaintiff's corporate representative agrees that a mere report under Section 111 is not enough to determine primary payer status. As she testified, in order to determine whether Tower Hill is a primary payer for any particular claim reported under Section 111, one would require information *from Tower Hill* as to whether or not Tower Hill actually settled that reported claim. [D.E. 70  at 24:12-25:23; *see also* 33:4:18 (testifying that data could be culled according to injuries *that Tower*

---

[3] Tower Hill, as a RRE, has satisfied this obligation since before 2012 through the engagement of several third-party vendors. [D.E. 71 at pp. 52, 75-113]. There is no dispute of this fact. *See* [D.E. 66 at pp. 33-34, ¶ 77].

10

*Hill advises* are related to the accident)]. And, Plaintiff's expert Daniel Regard testified that Tower Hill reports, under Section 111, the bodily injury claims it receives, not necessarily the claims it pays. *See* [D.E. 77, Ex. A at 91:11-20]. Mr. Regard further testified that, even in the cases where the parties have conducted so-called "data-matching," once a claimant is matched to an enrollee, that does not by itself identify whether there are any Medicare claims to be presented." [*Id.* at152:14-17]. Thus, the issue of whether or not Tower Hill is a primary payer cannot be determined solely from evidence that Tower Hill made reports under Section 111.

The fallacy of Plaintiff's argument that a report under Section 111 is an admission of primary payer status can be demonstrated by an abandoned exemplar claim. As previously briefed with respect to Plaintiff's Motion to Compel, *see* D.E. 37, 42, 57, and 58, Plaintiff has access to information reported by RRE's under Section 111 through a "CMS sanctioned" portal called My Ability. [D.E. 68 at 29:13-25; 30:16-19]. For this case, Plaintiff ran demographic information from its list of Medicare beneficiaries, pulled from all of its assignors, across the My Ability portal. [*Id.* at 35:7-36:7; 37:18-22; 38:12-19]. Then, the "plan name" column of those results were searched for entities that had "an indicia of association with Tower Hill." [*Id.* at 31:4-11]. The results of this search were

attached as Exhibit G to the Complaint. [D.E. 1 at p. 15 n.7, Ex. G;[4] *see also* D.E. 68 at 27:11-25; 120:3-9]. Only three "results" related to the Tower Hill entity involved in this case were identified following this search. [D.E. 1, Ex. G; *see also* D.E. 70 at 49:17-19]. After further investigation *by Tower Hill of the individual claims listed in the report,* it was determined that only one claim was viable. [D.E. 70 at 50:4-13]. In fact, for one of the purported exemplar claims found through Plaintiff's proposed data matching (L.P.), no settlement payment was actually made by Tower Hill. [*Id.*; *see also* D.E. 77, Ex. E, Req. No. 2]. This exemplar claim has since been withdrawn by Plaintiff. [D.E. 70 at 50:4-13]. Therefore, Plaintiff's own evidence of "Defendants' MSP Reporting" indicates that Tower Hill's reporting under Section 111 includes claims where no settlement or payment was ever actually made by Tower Hill.

A report under Section 111 or even a settlement does not automatically render Tower Hill liable under the MSP Act for any medical expenses that may have been paid by a MAO on behalf of a Medicare beneficiary with whom Tower Hill settled a claim. A further inquiry into whether the claimed medical expenses were reasonable, necessary, and related to the claim for which the settlement was

---

[4] The "Member Name" column of Exhibit G, which uniformly states D.L., is incorrect, as D.L. was merely used as a placeholder. [D.E. 68 at 41:5-25].

made will need to be performed on a case-by-case basis thus warranting against class certification.

> 2. <u>Plaintiff's Certification Plan is Based on Data for Which the Court Has Already Denied It Access</u>

Plaintiff's explanation for how it intends to prove liability and damages on a class-wide basis appears to be entirely dependent upon it receiving data from Tower Hill. *See* Motion, pp. 18-21. Yet, Plaintiff already sought this information from Tower Hill, and even brought this issue before the Court. Ultimately, the Court denied its Motion to Compel. [D.E. 61]. Following that Order, Plaintiff did not file a motion for reconsideration and the discovery deadline has passed. [D.E. 64]. Thus, to the extent the intent of Plaintiff's Motion for Class Certification is to re-argue its Motion to Compel or seek reconsideration of that order, such an argument is not well-founded and is procedurally improper.

Accepting this plain fact, Plaintiff's Motion for Class Certification should be denied because it is premised on the notion that it can execute its "Proposed Method" that purportedly will sort out all of the potential individual issues raised concerning liability and damages. *See* Motion, pp. 18-21. But, to perform the "Proposed Method," Plaintiff claims it needs the data from Tower Hill. *Id.* Thus, Plaintiff's own Motion for Class Certification demonstrates why this class cannot be certified as it offers no plan or explanation as to how it intends to prove, with

common evidence, that Tower Hill was the primary payer and failed to reimburse each individual putative MAO and for each putative MAO's claim without the requested data from Tower Hill.  In fact, even Plaintiff's proposed administration of the class claims requires a third-party vendor to access Tower Hill's "systems." Motion, p. 25. But, a certification order is not a blanket discovery order allowing a class representative unlimited access to the defendant's "systems." Plaintiff provides no explanation or rationale for how the host of individual issues raised by these claims can be reconciled without its "Proposed Method" and therefore its Motion for Class Certification should be denied.

### 3.  The Question of Reimbursement is an Individual One

Plaintiff argues that a common question is whether Tower Hill failed to make primary payment or appropriate reimbursement. Motion, p. 7. Plaintiff argues that it will prove this through records of the MAOs showing that they made payments for accident-related medical expenses and records of payment from Tower Hill. *Id.* at pp. 7-8. But, this purported "common" method of proof necessarily relies on the accuracy and reliability of its "Proposed Method" and the unfounded belief that the "Proposed Method" can sort out the various individual issues raised in Tower Hill's response. Yet, absent from the Motion or the filed expert reports is a clear description of what the "Proposed Method" actually entails or how the algorithms upon which the "Proposed Method" relies can sort out the

14

issue of determining which payments were made for "accident-related medical expenses" and whether or not *those* payments were reimbursed.

There are significant limitations on algorithms for matching disparate data sets. A matching algorithm cannot accurately or reliability identify which medical payments were "caused" by the event underlying the Tower Hill settlement. First, to even know the event that led to the Tower Hill settlement and the injuries claimed would require individual review of the claim file and settlement. Then, a matching of that settlement event to various medical expenses would either require individual review or would rely on the unsupported presumption that all medical treatment would be correctly coded to settlement event. But, Plaintiff provides no information on the capability of its Proposed Method to sort out these issues, much less the accuracy or known error rate of its Proposed Method. Plaintiff's expert offers no opinion on that fact. [D.E. 77, Ex. A, 124:25-125:2]. Thus, Plaintiff's statement that the issue of reimbursement is a common one is unsupported and does not justify certification of this class.

Further complicating the matter is the fact that the policies at issue here are third-party liability insurance policies. Accordingly, these claims are frequently resolved through settlement agreements in which the claimant/Medicare beneficiary agree to satisfy any outstanding Medicare liens. *See, e.g.* [D.E. 1, Ex. E (D.L.'s settlement agreement)]. If in fact the lien was satisfied per the settlement

15

agreement commitment, there would obviously be no claim against the primary payer. The only way to know whether the claimant fulfilled this contractual obligation would be through an individualized claim by claim determination. Neither Plaintiff nor its experts provide any explanation as to how the Proposed Method can account on a class-wide basis for liens that have already been satisfied. Nor do Plaintiff or its experts explain how they can determine if the MAO agreed to accept a negotiated (i.e., lower) amount than the amount paid on behalf of the enrollee. Thus, whether any putative class member has a claim against Tower Hill for medical expenses would require an individualized inquiry as to whether there was a settlement agreement in place requiring the satisfaction of any outstanding Medicare/MAO liens and if so whether and to what extent the parties to the agreement complied with this obligation.

4. <u>Determination of Damages Likewise Requires Extensive Individual Inquiry</u>

In addition to the individual issues raised above, the question of damages raises separate concerns requiring extensive individual inquiry to determine the amount owed for any particular claim that any putative MAO may have against Tower Hill. *See supra* Section A. 3.

Plaintiff argues that its proprietary software can answer the question of damages and that "[i]f Defendants did not reimburse Plaintiff's assignors or the

putative class member MAOs, the 'actual' damages is the amount of the medical expenses paid by Plaintiff and the MAOs." Motion, p. 22. Yet, the exemplar claim of D.L. demonstrates that such as task is not so straightforward. *See* [D.E. 70 at pp. 56-59 (damages around $8,000 or $9,000); D.E. 69 at pp.157-164 (damages sought $17,089.48); D.E. 77, Ex. C (Ex. 18 to Jorge Lopez Deposition demanding $17,089.48); D.E. 77, Ex. D (Ex. 31 to Natasha Blanco Deposition totaling damages to around $4,000)]. If Plaintiff cannot accurately determine the medical expenses that it contends Tower Hill should have reimbursed for its own exemplar claim, then how can it possibly suggest that such a task would be simple or straightforward on a class-wide basis.

Further, Plaintiff's expert Daniel Regard admits that there will necessarily be some "adjustment" of the claims following Plaintiff's proposed claims matching process. [D.E. 77, Ex. A at 115:4-116:7]. This would allow Tower Hill the opportunity to evaluate each claim presented by the putative class member against the underlying policy, the policy limits, the policy's prior payments, and the open coverage under the policy. [*Id.* at 116:8-14]. Thus, under Plaintiff's proposed methodology, Tower Hill would have the opportunity to, *on a case by case basis*, adjust the claims presented to it by the various putative class member MAOs. [*Id.* at 116:15-117:4]. This post-certification adjustment, even assuming the medical expense amount is undisputed, would require various examinations of the

17

individual insurance policies and claim files governing each putative class members' claim. Yet, Plaintiff has not proposed a model that answers how this post-certification adjustment will be performed on a class-wide or manageable basis.

### 5.  The Issue of Standing Also Requires Individual Inquiry

The standing of unnamed putative class members also poses a problem under Rule 23(b)(3)'s predominance factor. Before a district court can award relief, it will have to determine whether each member of the class has standing. *Cordoba v. DIRECTV, LLC*, 942 F. 3d 1259, 1274 (11th Cir. 2019). "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. The Judiciary's role is limited to providing relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) (Roberts, C.J., concurring)).

As this Court is aware, the issue of Plaintiff's standing has been heavily litigated in this case as well as in others. *See, e.g.* [D.E. 7]. Plaintiff is not a MAO. It is a shell company that was formed to acquire MAO receivables and bring this type of lawsuit. [D.E. 69 at 34:23-35:2]. Plaintiff argues that as an assignee of a claim that originally belonged to a MAO, it is entitled to stand in the shoes of the MAO for standing purposes. But whether all of the class members either have

MAO status in their own right or are valid assignees of an MAO claim is another question that must be answered separately for each putative class member.

Although this Court held that, at least for purposes of Tower Hill's Motion to Dismiss, Plaintiff sufficiently alleged it has a valid assignment with respect to FHCP, this does not eliminate the individualized assignability issues that would have to be addressed as to all the other putative class members' claims and other claims that may be asserted by Plaintiff on behalf of its other assignors. And, even in this litigation, Tower Hill has attempted to determine Plaintiff's standing to assert claims on behalf of other purported MA Plans and "downstream entities" for which it claims to have assignment rights. Plaintiff has thwarted those efforts by failing to produce even the very agreements on which it bases claims for reimbursement in this lawsuit. *See* [D.E. 43, 76].[5] Imagine the difficulty that will be presented in investigating the chain of assignment for non-party, putative class members and determining whether and to what extent they have a valid right to the claims they may seek. This history, specific to this case and Plaintiff, demonstrates that determining which entity has the legal right or claim against Tower Hill will

---

[5] Tower Hill's pending motion to compel seeks any agreement pursuant to which Plaintiff's various assignors "provides and/or arranges healthcare for the benefit of Medicare and/or Medicaid beneficiaries through [a Medicare Advantage Plan as described in the Complaint]." Accordingly, without these agreements, Plaintiff has failed to meet its burden to demonstrate what rights, if any, it has received from these chains of assignments.

devolve into fact-intensive inquiries into assignment chains and scopes of agreements.

Additional individualized inquiries relative to the assignments include: Is the putative class member pursuing claims as an assignee? Is there any showing that a valid assignment exists? What are the exact rights that were assigned and do they include the rights of reimbursement at issue in this lawsuit? So, another issue is whether any given claim was in fact assigned to Plaintiff or excluded from any assignment by the MAO. These are just a few examples of the predominating highly individualized assignability issues existing here.

6.  Individual Issues Regarding the Timeliness of Each Putative Class Members' Claim Predominate

Individualized issues regarding the timeliness of each claim also predominate here. The MSP Act states that a MSP claim for reimbursement must be "filed not later than 3 years after the date of receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed." 42 U.S.C. 1395y(b)(2)(B)(iii); *see also MSPA Claims 1, LLC v. Bayfront HMA Med. Ctr., LLC*, No. 17-CV-21733, 2018 WL 1400465, *6 (S.D. Fla. Mar. 20, 2018). Thus, for each and every putative class member, and each and every potential claim asserted by that class member, an individual inquiry into whether the claim asserted is timely would be required.

20

7.  <u>There Are Individual Issues Regarding the Extent to Which Policy Limits on a Claim Have Been Exhausted</u>

Plaintiff alleges that Tower Hill is liable for the full amount of any charges presented to an MAO with respect to a claimant under one of Tower Hill's policies.  But, as set forth on Medicare's website,[6] reimbursement from insurance plans is subject to the insurer's policy limits. Thus, the extent of policy limits is yet another individualized inquiry that militates against class treatment. *See, e.g.* [D.E. 77, Ex. A 97:10-23, 99:2-12, 116:8-14 (stating that his understanding is the proposed method would seek information regarding the underlying policy, including whether the policy limits had been exhausted)].

8.  <u>Plaintiff's Experts Are of Little Value Regarding Certification</u>

Plaintiff's experts are of little value to Plaintiff's class certification bid. Despite the fact that Plaintiff filed two expert reports, neither report addresses any issue concerning whether this class should be certified.

For example, even the report of Daniel Regard, which purportedly stands for the proposition that liability can be determined on a class wide basis (*see* Motion, pp. 3-4, 19, 21), does not in fact support such a broad proposition. As Mr. Regard

---

[6]   See How Medicare works with other insurance, https://www.medicare.gov/supplement-other-insurance/how-medicare-works-with-other-insurance/how-medicare-works-with-other-insurance.html (the "insurance that pays first (primary payer) pays up to the limits of its coverage"; the "one that pays second (secondary payer) only pays if there are costs the primary insurer didn't cover").

testified, he is not in fact offering an opinion on the legal liability of Tower Hill. [D.E. 77, Ex. A at 38:25-39:11, 40:11-41:8]. He offers no opinion as to whether the mere act of Tower Hill reporting under Section 111 creates liability. [*Id.* at 93:19-94:7]. In fact, he offers no opinions as to the certification or certifiability of the class. [*Id.* at 29:4-9]. In truth, Mr. Regard states that, with respect to Tower Hill, he does not "even know if there are any putative class members." [*Id.* at 48:15-16]. In his own words, Mr. Regard's engagement was to evaluate the information provided by Tower Hill and to form an opinion as to the availability of that data and Tower Hill's ability to produce such data. [*Id.* at 26:11-23; 39:7-11 (opinions are limited to the availability of data and the data's ability to identify which enrollee members and which claims related to those members, and ultimately to which MAO's those claims pertain)].

As for Plaintiff's other expert, Michael Arrigo, he is not even cited in support of any argument for class certification and instead is only offered in further support of Plaintiff's failed attempt to compel Tower Hill to turn over its claims data. *See* Motion generally. However, this discovery dispute has already been decided by the Court, *see* D.E. 61, and Plaintiff's Motion for Class Certification is an improper vehicle to seek reconsideration of this issue before this Court.

9. <u>Plaintiff Does Not Address the Claims of Non-MAO Putative Class Members</u>

Plaintiff's Motion contradicts itself with respect the to the proposed class definition. In the "class definition" section of the Motion, Plaintiff states that it seeks to certify a class of "All Medicare Advantage Organizations, First Tier Downstream and Related entities, or their assignees, that provide benefits under Medicare Part C". Motion, p. 12-13. Yet, apart from this citation, the phrase "First Tier Downstream and Related entities" is nowhere to be found within the rest of the Motion. Instead, Plaintiff consistently argues only for the certification of a class of MAOs. *See* Motion, p. 3 ("The settlement class consists of MAOs that made payments . . . .The settlement class consists of all the instances where Defendants failed to reimburse the MAOs for accident-related medical expenses paid by the MAOs . . . . ).  Thus, because Plaintiff makes no argument or showing as to why a class of non-MAOs should be certified, any attempt by Plaintiff to certify a class with those non-MAOs within its definition should be disregarded.

Even assuming non-MAO entities are subsumed within Plaintiff's definition of a MAO, certification of those claims is not appropriate. Plaintiff's Complaint defines those non-MAO entities as Managed Service Organizations ("MSO") and Independent Physician Associations ("IPA"). [D.E. 1 at ¶ 2]. Yet, Plaintiff offers no support for the notion that MSOs or IPAs have standing to bring claims under

the MSP Act. In fact, courts have found they do not. *See MSPA Claims I, LLC v. Infinity Prop. & Cas. Grp.*, 374 F. Supp. 3d 1154 (N.D. Ala. 2019); *see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.,* No. 1:17-CV-01541-JBH-JEH, 2018 WL 2392827, at *6 (C.D. Ill. May 25, 2018); *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, No. 17-23841, 2018 WL 1953861, *4 (S.D. Fla. Apr. 25, 2018). And, Plaintiff provides no showing of how those non-MAO's claims meet the requirements under Rule 23.  To the extent Plaintiff seeks to certify a class of non-MAO entities, that Motion should be denied.

### B. Plaintiff Cannot Satisfy Rule 23's Commonality Requirement

It is not enough for Plaintiff to allege that there are common questions; rather, a plaintiff must show that those questions can be answered by common proof. "What matters to class certification is not the raising of common questions – even in droves – but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes,* 564 U.S. at 350. In other words, a question is not "common" for purposes of Rule 23(a) unless "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 338.

For all the reasons stated above with respect to the predominance inquiry, claim under the MSP Act cannot be proven by common, class-wide evidence. Plaintiff cannot satisfy Rule 23(a)(2) and its Motion should be denied.

24

### C. Plaintiff Cannot Satisfy Rule 23's Numerosity Requirement

Plaintiff fails to make a showing that "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). A plaintiff bears the burden of making *some* showing that the class actually certified meets the numerosity requirement. *Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256 (11th Cir. 2009) (finding evidence presented concerned nationwide class, but no evidence submitted that Florida-only class was sufficiently numerous). Yet here, Plaintiff presents no showing that the class *as defined* is sufficiently numerous.

Plaintiff attempts to cite to the fact that there are "hundreds" of MAOs in support of its numerosity argument. Motion, p. 13. But, this information demonstrates nothing with respect to the class Plaintiff seeks to certify. The class definition does not embrace all MAOs or their assignees. It specifically includes *only* those MAOs or their assignees that have outstanding conditional payments for which Tower Hill is the primary payer. Motion, pp. 12-13.

However, nowhere does Plaintiff cite any record evidence indicating the number of MAOs who made a payment to a beneficiary who also settled a claim with Tower Hill. And, its expert does not offer an opinion regarding whether the proposed class is sufficiently numerous. *See* D.E. 77, Ex. A at 37:23-38:6; *see also* Motion,p. 6 n. 3 (citing to Regard Report D.E. 66 at ¶¶ 141-143 which estimates the number of MAO *enrollees*, not MAOs)]. Without any showing that the

25

proposed class of MAOs is sufficiently numerous, Plaintiff has not met its burden under Rule 23(a)(1).

### D. Plaintiff Cannot Satisfy Rule 23's Typicality and Adequacy Requirements.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV, 2006 WL 7346844, at *7 (S.D. Fla. Sept. 1, 2006). Typicality is undermined when a unique defense would impair the alignment of interests between the named plaintiff and the class. *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 692 (S.D. Fla. 2006) (citations and internal quotations omitted).

As for adequacy, Rule 23(a)(4) requires that the representative party in a class action "must adequately protect the interests of those he purports to represent." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). This adequacy requirement encompasses two separate inquiries (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the

action. *Id.* (quotation omitted). If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate. *Id.*

Here, typicality and adequacy have not been met because Plaintiff is not a MAO, but rather a shell company that holds claims, recovery rights, and causes of action for certain assignor health plans and MAOs. [D.E. 69 at 34:23-35:2]. Plaintiff is not a part of the class. It is a part of the putative class by virtue of their unilateral, boot-strap definition that the class includes assignees of MA Plans. Further, unique defenses related to the purported assignments made to Plaintiff and the scopes of those assignments warrant against finding Plaintiff typical. *See, e.g.* [D.E. 7].

In addition, the MAO for which Plaintiff purports to hold an assignment (FHCP) was placed into receivership, *see* [D.E. 69 at 129:24-130:2; D.E. 1, Ex. C], a unique fact which raises a whole host of individual issues that are not typical to other putative MAO class members such as the reason for the receivership and the reliability and accuracy of FHCP's information based on the circumstances of the receivership.

**E. Rule 23's Superiority and Manageability Requirements are Not Met**

Plaintiff argues that a class action is the superior method of adjudicating the case because proceeding on an individual basis is not economically feasible, that it would be impossible and inefficient for class members to recover unreimbursed

payments without the benefit of Plaintiff's alleged proprietary system for identifying the claims Tower Hill has failed to pay, that individual claims will overwhelm the judicial system, and that any "difficulties" in managing the class are merely "speculative." Motion, pp. 23-25.

As the above discussion shows, however, there is nothing speculative about the many individualized issues that predominate in this case. That alone precludes any showing of manageability or that this class action is a superior method of adjudicating this case, since it would require thousands of mini-trials in order to resolve.

Moreover, to determine who is in the class under Plaintiff's approach, the first step would be to gather data from the supposed 818 MAOs listed on the CMS website[7] to see if any have conditional payments claims against Tower Hill. Since this data is in the sole possession of these non-party MAOs, this will entail obtaining and issuing subpoenas to absent class members, who may or may not be willing to provide their data.

Even if Plaintiff somehow succeeded in obtaining the absent class member data from all 818 MAO's and/or their presently unknown assignees, however, the process would not end there: there would still have to be an individualized determination whether Tower Hill actually owes anything to each individual MAO.

---

[7] Motion, p. 13.

Then, even after all that, there would have to be an individualized damages determination, which will vary in each and every case and which will also require determinations such as whether or to what extent the MAO's lien was paid by the claimant or Tower Hill's policy limits had been exhausted. There is simply nothing "superior" about proceeding on a class action basis here. And, of course, MAOs are sophisticated businesses fully capable of pursuing primary payers for reimbursement without a class action.

### F.  The Proposed Class Definition is Improper

Plaintiff seeks to certify the following class:

> All Medicare Advantage Organizations, First Tier Downstream and Related entities, or their assignees, that provide benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare beneficiary's medical expenses where Defendant:
>
> (1) is the primary payer by virtue of having settled a claim with a Medicare beneficiary enrolled in a Medicare Advantage plan;
>
> (2) settled a dispute to pay for personal injuries with a Medicare beneficiary enrolled in a Medicare Advantage plan; and
>
> (3) failed to reimburse Medicare Advantage Organizations, First Tier, Downstream and Related entities, or their assignees, the payments provided for medical items and services related to the claims settled by Defendant.

29

Motion, p. 13-14. This purported class definition is improper, ill-defined, overly broad, and unascertainable.

### 1. The Class Definition is Overbroad

First, this class definition includes within it "first tier downstream and related entities." Yet, there is no mention in Plaintiff's Motion for Class Certification of these other entities; instead, Plaintiff's Motion is focuses on MAO's alone. Thus, Plaintiff has made no showing and has not met its burden in demonstrating how claims of "first tier downstream and related entities" under the MSP Act can or should be certified, much less defined those entities for the class or demonstrated how they would have standing to bring claims under the MSP Act.

Second, Plaintiff's proposed class definition is overly broad in that it has no date restriction and is inconsistent with the three-year statute of limitations. *MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp*, Inc., No. 18-CV-11702-ADB, 2019 WL 3239277, at *10 (D. Mass. July 18, 2019).

### 2. Plaintiff's Class Definition Defines an Improper Fail Safe Class

A fail-safe class is created where the class definition defines class membership in terms of the ultimate merits question of the defendant's liability. *See Alhassid v. Bank of America, N.A.*, 307 F.R.D. 684, 693 (S.D. Fla. 2015). A fail-safe class is impermissible because "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."

*McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 799 (7th Cir. 2017); *see also Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007).

As was the case in *Plymouth Rock*, Plaintiff's proposed definition "essentially mirrors the elements for a MSPA private cause of action." 2019 WL 3239277, at *11. Plaintiff's definition purports to include only MAOs that made payments "for a Medicare beneficiary's medical expenses" where Tower Hill "failed to reimburse" the MAO. Motion, pp. 13-14. It thus includes a liability determination as an essential element of the class definition. The class is defined in such a way that any MAO who is not successful on the merits of proving that they made a payment for which Tower Hill was responsible to make primary payment or reimburse the MAO is automatically excluded from the class. This "heads I win, tails you lose" definition is improper because class members "would be bound only by a judgment favorable to plaintiffs but not by an adverse judgment." *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980); *Genenbacher*, 244 F.R.D. at 488 (citing Fed. R. Civ. P. 23(c)(3)).

Plaintiff's expert recognizes the absurdity of this definition and testified that Plaintiff's proposed class "self-defines itself" in that "[i]f you made a payment to a Medicare treatment, then that would define you as being one of the putative class

members. If you did not make the payment, you would not be a putative class member." [D.E. 77, Ex. A at 50:2-14].

Under Plaintiff's class definition, the merits of each claim would need to be decided in order to determine class membership, and either the putative class members win or they are not in the class and are shielded from an adverse judgment. Because class membership is determinative of liability, the class definition creates an improper fail-safe class.

### 3. Plaintiff's Class Is Not Ascertainable

Plaintiff's class certification bid also fails on grounds of lack of ascertainability. "It is well established that before a district court may grant a motion for class certification, a plaintiff seeking to certify a class must establish that the proposed class is adequately defined and clearly ascertainable." *Lawrence v. S. Fla. Racing Ass'n*, LLC, No. 18-CV-24264-UU, 2019 WL 3890314, *4 (S.D. Fla. June 28, 2019) (citation and internal quotations omitted). *See also, e.g., Ward v. EZCorp, Inc.*, 679 Fed. App'x 987, 987 (11th Cir. 2017); *Karhu v. Vital Pharm., Inc.*, 621 Fed. App'x 945, 947 (11th Cir. 2015). To meet its burden of establishing ascertainability, "the plaintiff must propose an administratively feasible method by which class members can be identified. The Court must be able to look to objective criteria to accurately delineate membership in the class, and identifying class

members must be a manageable process that requires little individual inquiry." *Lawrence*, 2019 WL 3890314, *5 (citations and internal quotations omitted).

To determine who is a class member here, however, there would have to be an individualized inquiry regarding whether Tower Hill was obligated to pay based on all of the individualized factors discussed above. Accordingly, a merits decision will have to be made in each case to ascertain who is a class member -- the antithesis of an ascertainable class.

Plaintiff's "data matching" proposal underscores Plaintiff's insurmountable ascertainability obstacle. Plaintiff has submitted the Declaration and Report of Daniel Regard, who maintains Plaintiff has a computer program that can determine whether any given class member has claims against Tower Hill. [D.E. 66]. Yet, as Mr. Regard admits, the putative class members are only those "organizations that provided Medicare-based coverage to enrollees where those enrollees were injured in a circumstance that gave rise to a Tower Hill insurance coverable event." [D.E. 77, Ex. A at 50:2-7; *see also* 49:10-50:14]. And, ascertaining these entities cannot be done without access to the class members' data in order to run the data match. Without that access, Plaintiff cannot possibly identify which of the allegedly hundreds of MAOs may have claims against Tower Hill.

Plaintiff's Motion does not describe how it plans to ascertain the class. As it stands now, it appears Plaintiff's plan is to notify the 800+ MAOs registered with

CMS, whether or not they have a claim against Tower Hill, and then request those MAOs submit private, personal health information for its enrollees for an unknown time period so that Plaintiff can then cross-check that demographic information against MyAbility (a system those MAOs likely have access to and check themselves) to determine whether Tower Hill reported a claim related to that enrollee. This claims auditing procedure does not present a manageable process with little individual inquiry.

Plaintiff cannot simply come into court and say that others may potentially be similarly situated to the Plaintiff. For a class to be certified, the class must be ascertained so that proper notice can be given. Plaintiff's proposed class cannot be ascertained without a claim-by-claim review from parties -- putative MAO class members -- who may or may not be willing to share their data. Even if Plaintiff had access to such data, however, that would not solve anything, because Plaintiff's proposed "data matching" again assumes that just because a claim is reported that must mean Tower Hill is liable for the bill. And that is contrary to all the law set forth above.

### III.   CONCLUSION

For all the foregoing reasons, Defendants, Tower Hill Prime Insurance Company and Tower Hill Claims Services, LLC respectfully request this Court to deny Plaintiff's Motion for Class Certification.

## <u>CERTIFICATE OF WORD COUNT</u>

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 7,956 words, excluding the parts exempted by said Local Rule.

Respectfully submitted,

/ s / Nicole Smith
NICOLE SMITH
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

and

SAMANTHA DUKE
Florida Bar No. 0091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
E-mail:   sduke@rumberger.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:   James L. Ferraro, Esq., at jlf@ferrarolaw.com;  Janpaul Portal, Esq., at jpp@ferrarolaw.com;  James L. Ferraro, Jr., Esq., at jjr@ferrarolaw.com;  and Louise R. Caro at lcaro@napolilaw.com.

/ s / Nicole Smith
NICOLE SMITH
Florida Bar No. 0017056
RUMBERGER, KIRK & CALDWELL
Post Office Box 10507
Tallahassee, Florida  32302-2507
Telephone:  (850) 222-6550
Telecopier:  (850) 222-8783
E-mail:   nsmith@rumberger.com

and

SAMANTHA DUKE
Florida Bar No. 0091403
RUMBERGER, KIRK & CALDWELL
Lincoln Plaza, Suite 1400
300 South Orange Avenue (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
E-mail:   sduke@rumberger.com

Attorneys for Defendants

36